**William MAYS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 14728.

United States Court of Appeals Ninth Circuit.

May 8, 1956.

Jack Dunaway, Hollywood, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Leila F. Bulgrin, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and FOLEY, District Judge.

FOLEY, District Judge.

Defendant William Mays appeals from a judgment of conviction upon the verdict of the jury finding him guilty of the offense charged in the second count of an indictment. Count Two charged a violation of § 95a of Title 12 U.S.C.A. as follows:

"That at all times herein mentioned defendants * * *, William Mays, * * * neither individually nor otherwise had obtained permission or license to acquire, hold, or transport gold bullion by any regulation issued by the Secretary of the Treasury.

"On or about February 13, 1954, in Riverside County, California, within the Central Division of the Southern District of California, defendants William Mays, * * * did wilfully and knowingly acquire,

hold, and transport approximately 350 troy ounces of gold bullion, estimated .850 fine, and did aid and assist in so doing; * * *."

The regulations promulgated pursuant to Executive Order No. 6260, 12 U. S.C.A. § 95a note, authorized by said § 95a define gold bullion as follows: [31 C.F.R. § 54.4(9)]

" 'Gold bullion' means any gold which has been put through a process of smelting or refining, and which is in such state or condition that its value depends primarily upon the gold content and not upon its form; the term 'gold bullion' includes, but not by way of limitation, semi-processed gold and scrap gold, but it does not include fabricated gold as defined in this section, metals containing less than 5 troy ounces of fine gold per short ton, or unmelted gold coin."

The points relied upon are as follows:

"I Appellant contends that what constitutes gold bullion is a question of law; that the exhibits offered by the Government and received in evidence were not gold bullion as a matter of law; therefore the whole question as to the admissibility and character of the substance offered by the Government should have been withheld from the jury.

"II Appellant further contends that if the jury should have ruled on whether or not the substance offered by the Government was gold bullion, then the instructions given by the Court were inadequate to apprise the jury of its fact finding duty.

"III Appellant further contends that if the instructions given by the Court were adequate and not erroneous, then the implied finding by the jury that the substance offered by the Government was gold bullion is unsupported by the evidence and contrary thereto."

██ The question as to whether the exhibits constituted gold bullion is ob-

viously a question of fact. United States v. Levy, 2 Cir., 137 F.2d 778. In so treating the question and considering certain expert testimony, the Court, 137 F.2d on page 781, had the following to say:

"Turning to appellant's second point, we are clear that the six bars of melted scrap jewelry held by him were gold bullion within the terms of the authorizing act and the Presidential order. The jewelry was not of pure gold, some being gold plate, some gold filled, and some solid gold. It cannot reasonably be contended that Congress intended a general exemption of this scrap gold, once melted, since that would substantially weaken the effectiveness of the Act in preventing gold hoarding and exporting. * *. * And there was convincing expert testimony that melted scrap gold is generally considered gold bullion. * * *

"* * * And at the trial one expert testified that the gold content of bullion need be no more than one-tenth of one per cent. * * * But in any event, there was expert testimony that the bars here were within this definition. And although other expert testimony was to the contrary, the question was for the jury; and its finding of guilt settles the matter."

As in the Levy case, we find here expert testimony that the contents of Government's Exhibits 1, 2 and 3 were generally considered gold bullion.

Mr. Charles John Hansen, a jeweler and dealer in specimen minerals, in response to questions of Assistant United States Attorney Manuel L. Real, testified [Rep.Tr. pp. 90-P and 90-Q]:

"Q. By Mr. Real: Now, from your knowledge of gold and the language of the trade, what is generally known in the trade as gold bullion, Mr. Hansen?

"* * * * * *

"A. Yes. Any gold that has been worked on by human beings,

that is not in its natural state, the way nature produced it, we consider it gold bullion.

"Q. From your examination of Government's Exhibits 1, 2, and 3, and your knowledge of gold, would you consider that the contents of Government's Exhibits 1, 2, and 3 are or are not gold bullion?

"* * * * * *

"A. I would say no matter what kind, the entire exhibit we would consider as gold bullion."

Mr. John R. Carr, Assistant Assayer since 1940 at the United States Mint in San Francisco, California, called as a witness for plaintiff, in the course of his testimony, stated that Government's Exhibits 1, 2, and 3 contained gold. Among other things he testified as to the fineness of the gold contained in the exhibits—.850 fine in each of the three exhibits. He explained that fineness means parts per thousand. Webster's definition of fineness includes "the proportion of pure silver or gold in jewelry, bullion, or coins, often expressed in parts per thousand." Under examination by Mr. Real, Mr. Carr testified that

"Q. Mr. Carr, what is your description of the contents of Government's Exhibits 1, 2, and 3?

"A. This material as received by us would be called amalgam cakes, gold amalgam cakes.

"* * * * * *

"Q. By Mr. Real: From your observation of Government's Exhibits 1, 2, and 3, can you tell how that gold came to be in the state it is in now?

"A. In my opinion this material has been formed in this particular manner by amalgamation, amalgam has been driven off with heat, leaving the gold and silver content.

"* * * * * *

"The Witness: Amalgamation is a process used in the extraction of gold, free gold. It is collected with mercury, the gold is collected with mercury, and then the mercury is driven off with heat, leaving the gold.

"Q. By Mr. Real: That is what that gold is, is that correct?

"A. That is what that gold is.

"Q. That has had mercury added to it and driven off?

"A. Yes.

"Q. But has not been raised to the melting temperature of the gold?

"A. There are some melted pieces in there.

"Q. The melted pieces, what are they? What is the general reference to those pieces?

"A. Those are gold bullion."

The last answer was stricken on motion of a defense counsel, however, later under examination by Mr. Kenneth Cleaver, attorney for co-defendant Hogan, the record shows the following questions and answers:

"Q. By Mr. Cleaver: Or, in fact, you said it was in the parlance of metallurgists or assayists that this would be considered gold bullion?

"A. I didn't say it was all gold bullion, in my estimation.

"Q. What part of it is?

"A. I say the part that is melted, we would consider as gold bullion.

"* * * * * *

"Q. By Mr. Cleaver: The part that is melted you would consider gold bullion?

"A. This part in here (indicating).

"* * * * * *

"The Witness: This, in my estimation, is gold bullion (indicating). That is an alloy melted.

"The other is material that has been treated with amalgam and quicksilver, driven off, leaving you a gold sponge.

"Q. By Mr. Cleaver: You consider that the melted portion you showed us was the gold bullion?

"A. Correct.

"\* \* \* \* \* \*

"A. I say that melted gold is an alloy of melted material containing gold, is gold bullion \* \* \*."

Webster's definition of smelt includes "to melt or fuse, as ore, with an accompanying chemical change, \* \* \*."

The witness Carr's testimony in effect is that the melted portions of the contents of Exhibits 1, 2 and 3 are gold bullion and as we have noticed, the definition of gold bullion given in the regulations includes any gold which has been put through a process of smelting or refining.

Under further examination by Mr. Cooper, counsel for a co-defendant, Mr. Carr, referring to two pieces of metal taken from the exhibits, said that the piece exhibited to him taken from Exhibit 2 was gold bullion. He was interrogated and gave answers as follows:

"Q. —and a smaller one that I find within the can which is Government's Exhibit 2 for identification. Now, that, sir, you refer to as what?

"A. Gold bullion.

"Q. That is gold bullion?

"A. Melted gold.

"Q. And this gold bullion **or** melted gold you found where?

"A. In one of the cans. I marked them myself as—

"Q. Yes. Now, these two pieces are the only gold bullion that you found in any one of the cans, Government's Exhibits 1, 2 and 3?

"A. There are several small pieces among the other. The bulk of them—

"Q. However, could you explain to me what is the value of the two pieces that you have designated gold bullion?

"A. Yes, I can. The value of the larger piece would be $448.35. The smaller piece $225.05; that is, the gold value."

From the above excerpts and from other evidence, it is clear that there is in this record sufficient evidence to support a finding by the jury that each of the Government's exhibits contained gold bullion. In the course of the instructions the jury was informed that the defendant was presumed to be innocent and that in the event they had a reasonable doubt as to his guilt he was entitled to an acquittal. They were given to understand that the definition of reasonable doubt accompanied every instruction given and was to be considered as applying to every element of the case. In its instructions the Court gave to the jury pertinent definitions from applicable regulations. On an occasion when the jury returned to court seeking an explanation of an instruction, they were informed by the Court that "it has to be proven with respect to Count 2 that Exhibits 1, 2 and 3 were gold bullion." This was adequate to inform them that the question of whether the exhibits contained gold bullion was a question of fact for their determination.

As we have seen, there was before the jury evidence that a substantial portion of the exhibits was gold bullion. No point was made that the quantity found was less than approximately 350 troy ounces, as charged in the indictment. Appellant's principal contention seems to be that the exhibits contained no gold bullion in any quantity within the meaning of the definitions to be found in the regulations.

Judgment affirmed.